M.R. v. Ridley School District M.R. v. Ridley School District There are two points that I would like to emphasize this morning. The first is that interim tuition is relief that must be obtained in a civil action. It's not automatic. And second, that an adverse judgment on the merits precludes a subsequent award of any relief, including interim relief. It seems pretty curious to me, Mr. Riley, that your assertion that they were obligated to approach the court when they had won, right? I thought the development of the case law in our own circuit had made it clear that if a hearing officer finds in favor of the parents, then that does constitute an agreement with the state, and that by that very fact, by operation of law, by no further action of anybody, those parents are moved into a position with the child where that is the operative placement and the obligation to pay for it falls on the school district. Is that not the way it works? That is not correct, Your Honor. Okay. So, point out that that's wrong. What case says that that's not the way it works? Ray Lee says that, Your Honor. There are two provisions at issue. How about Susquenita? Susquenita v. Ray Lee, yes, Your Honor. Right. But, I mean, where is it not to say that? I'd ask you to start with the statute. There is, both in the statute and the regulations, there are the state-put provisions. The state-put provisions require that during the course of administrative proceedings or judicial proceedings that a child is to remain in the then-current placement. Right. In addition, the regulation says that a hearing officer's decision that a child is properly placed in a particular private school is an agreement, is to be treated as an agreement for purposes of the state-put provision. Okay. But Ray Lee says, we conclude the policies underlying the IDA and its administrative process favor imposing financial responsibility upon the local school district as soon as there has been an administrative panel or judicial decision establishing dependent placement. Your Honor, the... So, isn't that exactly what you're... No, Your Honor. You have the state-put provisions on the one hand, and then you have the relief provision of IDEA on the other. And Ray Lee concerns the intersection of those two. The state-put provisions themselves don't say anything about financial responsibility. In Ray Lee, this Court considered state-put and the relief provisions and said that interim assessment of financial responsibility is in the range of relief available under IDEA. Oh, my gosh. Another... That is your argument? That word from Susquenita's framing of it as relief? Maybe I'm misunderstanding you, but it sounds like your argument is going to the point that the language Susquenita used in calling that relief turns this into an obligation on the family to have asked for something which they've already got. No, Your Honor. The state-put provisions on their own say nothing whatsoever about financial responsibility. All they say is that the student is to remain in the current placement. Right, but we have a case that says... Your Honor, that case, I would ask you to... I'd ask you to reread that case. The case concerns... The Ray Lee case considers Burlington, takes the Supreme Court's decision in Burlington, which permitted tuition reimbursement as a substantive remedy. And Ray Lee says that considering Burlington and considering the relief provisions of IDEA, that interim assessment of financial responsibility is in the range of relief available. All right, and the parents here have sued for that relief. What is your argument whereby the parents should lose? The parents sued after an adverse judgment on the merits. That the adverse... On the merits of a different issue, of the suitability of the FAPE. No, Your Honor. The district's argument is that the interim tuition claim was a claim that the parents were responsible to bring as a compulsory counterclaim when they brought all of their other counterclaims. What case says that that's what they have to do, or they are forever barred? No, I'm... And they've waived and... Well, I'm relying on Ray Lee, which says that interim tuition is relief. But what says they're now barred from seeking that relief at this stage? The relief provisions of IDEA say that the district court is to receive the record, consider any other evidence, decide the case based on the preponderance of the evidence, and then issue appropriate relief. So our argument is that once the district court has determined that the school district did not violate IDEA, then the parents are not entitled to relief. And then the case is closed, and they're not entitled to interim relief as well. Let's leave that piece, the when does it end piece, off to the side for a moment, and just stick with the question of how this statutory scheme, as suggested by the regulations, is supposed to work. If the idea, the remedial idea behind the statute is that we want to leave children in the placement that's best for them, that's the whole point of the state put provision. And are you suggesting that the statute was crafted with the result in mind that parents would be financially responsible for that private placement unless they took some affirmative step? In other words, your position is it's not implicit in the state put provision that the school district is going to be on the hook, right? It's not implicit in the state put provision on its own. Then what, I guess that leaves me puzzled because if all IDEA was saying is wealthy parents can go put your children in private schools if you want, what is it saying that doesn't exist completely independent of the law? No, no, this court in Ray Lee said it's the combination of the state put provision and the relief provision that the Supreme Court interpreted in Burlington. And it's the combination of those two things that enables a court to provide relief in the form of interim tuition. I apologize if I'm not articulating this clearly, so let me try again. If your reading of the statute is that absent the parents making an affirmative step to get relief, that is to put the school district on the hook, that the school district wouldn't be on the hook, what does IDEA actually add that doesn't exist just by virtue of a person being free to put their child in private school? Because if it means you can put your kid in private school and pay for it, what's the remedial end of that statute? The remedial end of the statute is addressed in Burlington. That if a school district has violated IDEA, then a school district is responsible for retroactive relief. The school district is responsible to pay for what it did not provide. Here in this case, the school district from the very beginning said that it provided, it offered a free appropriate public education. The parents disagreed. Now you've lost that in front of the administrative officer, right? We did, but we ultimately demonstrated both to the district court and to this court that the school district did provide a free appropriate public education. During the period when they were under the impression, because the only operative authority in the case, the administrative officer said, no, you lose, they keep their child in private school at relatively high expense, thinking it's getting paid because of what the statute says. They're out of luck. They're just suckers for thinking that. It wasn't paid at all. The school district never paid in this case. No, and they should have. They're financially responsible under Rayleigh. I guess I don't get it. Let me ask you a question about waiver. There's a case law that says they can't waive statehood. Doesn't that relate entirely to the whole concept of financial responsibility? That is, the school district has that financial responsibility under statehood, and it can't be waived by the parents. That's the drinker case, Your Honor. Yes. In the drinker case, the parents raised both a merits claim and an interim tuition claim in the district court. They raised them concurrently. And the district court decided that the parents' merits claim didn't merit relief. However, drinker imposed interim tuition on the part of the school district.  And in the meantime, the district court entered an adverse judgment against the parents. So the school district's position is that once the district court found that the school district did not violate IDEA, then the case was over and the parents were not entitled to any relief, much less interim relief. The interim at that point was over. What's the regulation say? Your opponents talk about the regulation. The regulation speaks in terms of the judicial process running its course. We're here. The process hasn't run its course until you get to the conclusion of an appeal as a right, typically. No, it only hasn't run its course because the parents waited nearly two years to file a claim for interim tuition. That was a claim that was available to them when they filed their counterclaims in the former case, Your Honor. I meant, not we're here today, but the 2012 decision of this court, right? The decision being there was an appeal as a right from the district court's decision holding that fate was in fact offered. So what's your argument in the light of the regulation that that appeal as a right is not part of the extent covered by the regulatory regime, that you're allowed to fight until you're exhausted your judicial rights? It's the fact of the intervening adverse judgment. So you have the Joshua A case from the Ninth Circuit, which says that where there's an existing, timely sought order for interim tuition that's timely sought and granted in the district court, Ninth Circuit said, well, that can extend into the appeal. However, in this case, no such order was timely sought. In fact, as I said, it wasn't sought until well into the appeal after the intervening fact of an adverse judgment on the merits. Counsel, you acknowledged below that if the parents have made what you regard as a timely request for interim tuition in the wake of the decision by the district court, the federal district would have been obligated to make that interim tuition payment. Is that not correct? Not precisely, Your Honor. The district court would have had the authority to enter such an order if the parents had raised such a claim in the civil action that was existing. Maybe we're saying the same thing, but I'll quote you from Supplemental Appendix 6. The court asks, okay, so my question then, and then I'll be quiet and let you talk a little bit, is had the parents filed the counterclaim as you say they should have on June 3009, would you agree that you owe them money under the stay put provision? Mr. Riley, yes. They had a viable counterclaim that they didn't raise. In the meantime, the district court So they waived it? They did, yes. This is the case where in Drinker this court said that a claim couldn't be waived. So in order, on your assumption that they had to make that claim and somehow prove it, you all seem to agree all they had to do was present the decision of the hearing officer, and I believe you acknowledge that with the presentation of that decision, nobody disputes it was a decision, you would have been obligated to make that claim. I believe the district court, yes, they actually had to do more than that, Your Honor. They had to make a due process complaint. They had to present witnesses and then obtain a favorable decision from the administrative hearing officer, and that's part of our compulsory counterclaim and res judicata argument, that all of those things, the complaint, the hearing, and the hearing officer's decision were all necessary for the parents to be able to obtain an interim tuition order. But let me get this straight. Isn't it correct that when they come to the district court and file, you're saying they had to make that compulsory counterclaim before the administrative hearing? No, no, Your Honor, in the district court. In the district court. Yes. Compulsory counterclaim. How do you reconcile that position with what seems to be the clear law in the circuit, that this right to the interim payment cannot be waived? I think there has to be an explicit agreement between the parents and the school authorities waiving the right to that tuition reimbursement. I think the district court fairly pointed out that the compulsory counterclaim argument is essentially a waiver argument. The Drinker case said that there was no waiver in Drinker, that there could be a waiver in some case, and we argue that in this case there was, that the intervening fact of the district court's adverse judgment took away the district court's ability to order any relief, including interim relief. If the district court had, since there was no, since the school district did not violate IDEA, the district court had no authority to order any relief and necessarily no authority to order interim relief. All right. We'll hear from you on rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Alan Gatvit, and I represent MR and JR, parents of the minor student, ER. The case law and the statute is clear that it's automatic. It's an agreement. As soon as the administrative due process hearing officer finds in favor of the parents that there was a denial of fate and that the private parental placement is appropriate, an agreement between the school district and parents that that becomes dependent placement occurs. And it's automatic. And if I may direct the Court to. The placement is automatic, but I guess the issue is do you have to do anything to then get, recover the cost of that? What's your obligation in terms of affirmative seeking of relief and the time period for that? Well, if I may cite the Court to another section of Susquehanna School District v. Ray Lee that Your Honor didn't get to, at page 84, it is undisputed that once there is a state agreement with respect to dependent placement, a fortiori financial responsibility on the part of the local school district follows. Thus, from the point of the decision forward, student's dependent placement by agreement of the state is the private school and Susquehanna is obligated to pay for that placement. Okay, they didn't. They didn't. And you need to assert your right to that relief. And they're saying you needed to assert it early on and you didn't. What's wrong with that argument? What's wrong with that is footnote 10 of the Supreme Court's decision, Honig v. Doe, where the Supreme Court said, we do not believe that school officials can escape the presumptive effect of the state put provision simply by violating it and forcing parents to petition for relief. The fact of the matter is that in the wake of Honig and after Susquehanna, which I think, yes, after Susquehanna, the Department of Education promulgated the regulations that we're talking about. The Department of Education looked at those issues, looked at those decisions, and promulgated what was then Part 300, 514 is now 518. And they said that the hearing officer's decision creates the state put and the district is responsible. So I think that there's no – The other side here, Mr. Riley, is perfectly prepared to concede that the state put provision kicks in. Right. What you're gliding over a little bit here is the point I think that Judge Rendell is pressing on, which is they are saying the state put provision is one thing. Paying for the placement is another thing. Paying for the placement is a form of relief. And there are obligations, affirmative obligations, on a person who wants relief to ask for relief. We don't just hand people money. They have to ask for it and make their case. Here they didn't do it. What's the response to that? What Mr. Riley is arguing is it creates litigation. That if the court adopted his formulation, then every time there was a decision by an administrative hearing officer which created a state put and where the obligation of the district for financial as per susquenita is immediately created, you're forcing litigation to be filed. You're forcing suit to be filed. Instead of the district is on notice. They know susquenita. They know the IDEA. They know the regulation. Their obligation is to pick it up. Now, if parent had never asked, I guess, then maybe they slipped through the cracks. But the fact is that at the point where the district court made a decision, parent asked and said, all right, well, now we're not looking at tuition reimbursement. We're only looking at dependent placement unless the court of appeals reverses. Counsel, when you filed the counterclaim in this case in response to the suit filed by the school district, in the relief that you sought, you specifically sought compensatory education and tuition reimbursement. Now, I gather you thought of that as something different than the type of interim reimbursement that we're seeking now. Is that correct? I mean, certainly you could have ‑‑ I mean, tuition reimbursement was very much on your mind. It would have been simple enough to include in that the request for the immediate interim payments. Isn't that correct? It would have been. Could have saved a lot of trouble. Could have, would have, should have. It wouldn't be here. I wish we could have a time machine and send me back. But the question is, is it fatal? And it's not. Also, you have to keep in mind that at that point only 38 days of dependent placement had occurred. The subsequent year's tuition had already been paid by the parent. If you look at the stipulation, you'll see the benchmark had already given a tuition reduction of $15,000, which redounds to the school district's benefit, which they would have not gotten if they had to pay directly. So it was not ‑‑ nothing was ripe at that point. The ESY had not started when the counterclaim was filed at the end of June in 2009. All these things occurred subsequently. And ‑‑ What's the outer limit? I mean, you waited almost two years to file suit. What if, I mean, is there a statute of limitations for bringing the claim? I guess conceivably there's an outer limit. But in this case, it was done promptly after the district court rendered its decision. And when Mr. Riley was discussing the procedural posture of Drinker, I think it's important to, for the court to look back at it because I think he got it wrong. The court will recall in Drinker there was a due process hearing. The hearing officer ordered that FAPE was offered, but there had to be a transition period. Parent did not appeal that. It was only subsequently when the transition process was not working out that parent filed a new due process. The hearing officer, the appeals panel, and the district court all said, you know, that was resolved in the first one. But you're right that the school should have been paying the pendent placement. So that's not so different from what we have here where the pendency issue was really raised in a separate matter when parent didn't appeal. Well, I did appeal. And the district court reversed the hearing officer. And at that point, parent said, well, it's no longer going to be covered by tuition reimbursement unless the Third Circuit appeals. So you have to cover it under pendency. Would you speak to the D.C. Circuit's opinion in Anderson v. District of Columbia? Yes. The D.C. Circuit's opinion in Anderson relies on language from the Supreme Court in Honig. And I think the D.C. Circuit ignores the posture in Honig where the court was actually dealing with a disciplinary matter, where a child was pulled out of the educational setting because of disciplinary issues and fears about safety of the child and others. Subsequent to Honig, Congress amended the statute and the regulations were changed to sort of obviate the concerns that were present in Honig. That's not the typical IDEA case. So I think that the issue or the argument of the D.C. Circuit where they were concerned that this was no longer a unilateral school decision once the district court decided, but now a court had placed its imprimatur on it, so it should end. I think the better- Well, that's still, I mean, it's the same logic applies here, right? If the district court says you got a fate, it's no longer the school district acting unilaterally, same logic. What's wrong with the logic? The same logic is that the reason for the pendant placement requirement is not really unilateral action, that it was in the narrow factual confines of Honig that that came out. The reason for the pendant placement is the continuity of the child setting, the policy of Congress that a child should remain in a setting and there should be continuity. Let me take it- So if the district court reversed the administrative, but then it comes to court of appeals, and then it reverses the district court, you have disrupted the child in the meantime, presumably. Exactly. Exactly. I mean, what if we had a child who was in a private school pursuant to an IEP and a district NOREP, and they were in an autism program, and the district started an autism support program and decided to pull them back, and that was the situation, I believe, faced by Your Honor in the opinion you wrote in J.E., where the district wanted to pull the child back into the district's program. The child would have been yanked out for the 15 months, which is what the time period was between the district court decision and this court's decision in this case. And then if the court of appeals reverses, then the child has missed that. Or what about in an early intervention setting where the child is three and ages out and five? The practical implications. Again, a child who is 18 who the school district decides they should graduate on their IEP, that they've achieved their goals, and the parent challenges that. When is it due process? And district court reverses. By the time the court of appeals decides, the child has aged out. I mean, 21, you can't go back to high school. It's over. So the implications of the ending dependent placement at the arbitrary and no disrespect to the district court, but the arbitrary. When I say arbitrary, I mean by the timing. You know, Judge Rebrano in J.E. decided very quickly the merits decision. In this case, Judge Goldberg was just on the bench, had had a giant number of matters from other judges dumped on him, and it took 14 months. So the timing is arbitrary, and the burden on the parents is arbitrary. Absolutely. The district court wrote a very, very thoughtful decision here, and yet at the end of it, although he ends up agreeing with your position, he virtually calls the outcome absurd. I mean, he's obviously deeply troubled by what happened here where the school district is ultimately vindicated, and yet they are required, despite the conclusion that throughout, they were providing a fair, appropriate public education. They're on the hook for, I guess, several years of tuition reimbursement, and he feels that's an absurd outcome and feels he's compelled to reach that conclusion, but thinks it's absurd. How do you respond to that? Well, as this court said in Pardini and Susquenita, and in quoting the unpublished decision in Woods, Section 1415J represents Congress's policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved. And while it may seem unfair to the district, what happens if I had been more persuasive and convinced this court of appeals to reverse and the parents, dad's a cop, mom's a special ed teacher, had been unable to afford to continue the tuition? The child would have been pulled back, would have been in a setting where they weren't getting fape under an IEP that this court, if, you know, if wishes, if this court reversed and found it did not provide fape, then that child's been denied the 15 months. Congress has made a decision that balancing the interest, that the child's interests come before the district's financial interests, and I understand the district court's concern. I think absurd is a little strong, but in weighing that the court has to come down on the side of what Congress intended. And I think that the argument, I mean, the discussion in the Ninth Circuit's decision in Joshua A. is very useful. And also in Ringwood, which is the New Jersey District Court case, the court points to the Washington Appeals Court decision in Kitsap, and I can provide that citation later. And the Appeals Court in Washington actually did, I thought, a very good job of discussing the policy reasons and why the calculus has to come down for the child. Which is quoted by Judge Kavanaugh in Ringwood. Yes, sir. It's much longer in Kitsap. Interesting. Okay. Your Honors, if the court has no further questions for me. Nothing further. Thank you. Thank you very much. Rebuttal, Mr. Brown. Your Honor, I would only like to finally address Judge Goldberg's observation about the result being absurd. The district believes that the result is absurd here for the really unique reason in this case that its order of interim relief occurred for the first time after an adverse judgment on the merits. It would be, I understand. Doesn't that assume away our language in susquenita? Our language in susquenita is this school district is required to fund the placement. The district's financial obligations with respect to the pen and placement are immediate and may not be deferred until the close of litigation. That's the view that we're bound by. So what difference does it make that it's after the district court says there was fate that they come forward and say, well, there was a whole long period of time there where they were obligated from the moment there was an administrative officer's decision to be paying for that placement? In light of susquenita, what difference does it make that it happened after the district court's decision? Your Honor, I would ask you to consider the rest of susquenita and the argument that I made earlier which said that this is relief, that it's relief that must be requested, that it does not happen. You keep saying that, but where, on what case, on what statute, on what regulation are you coming up with this language that a quote must be requested? The susquenita language is exactly contrary. I mean, I just read it to you. It says the district's obligations with respect to pen and placement are immediate and may not be deferred. It doesn't say are immediate if the other side asks for it. Are immediate at least once they ask for it. It just says immediate and may not be deferred. Where are you getting your language? From susquenita, which says that the interim assessment of financial responsibility is in the range of relief available under IDEA. So it's all on the word relief. It's completely in your reading of the word relief. No, no, Your Honor. It's that sentence. It's Burlington. It's this court's analysis of Burlington. The provision of interim relief is completely dependent on the relief provisions of IDEA. It's associated with the state court, but relief is governed by the relief provision of IDEA. Why don't you respond to your opposing counsel's argument that we're dealing with a congressional choice here. Congress could have seen it different, but Congress made a very specific choice that says once that child is in a placement, they're to stay in that placement and the responsibility for that is going to be on the school district. And that's their choice. So that even if in the end it turns out it was all wrong, the school district had it right, Congress says you're living with it. All that Congress said, Your Honor, was that the student is to remain in the current placement and Congress, in addition, enacted the relief provision. How is that remedial? Help me how that is remedial. How is it remedial for Congress to say the child will stay in the placement and you parents are going to pay for it? I mean, where's the remedial aspect of that? Isn't it only remedial if the school district pays? Congress gave both parents and school districts a detailed dispute resolution process that begins with a due process complaint and can wind up in the Third Circuit. There are detailed both statutes and regulations concerning what's necessary. You know, you're required to file a complaint to have a hearing. All towards the issue of fate, right? All towards the issue of whether free and public education is being provided, right? That's the school district's ultimate responsibility, and the school district complied with that responsibility here. And that's why we believe that it's absurd having a district court find that we complied with fate and then thereafter for the first time award interim relief once the interim was over. On your absurdity point, your absurdity point is that ultimately the school district is vindicated and yet they have to pay out all these tuition costs. In a scenario where procedurally the parents did everything they were supposed to do, as you see it, and tuition costs were paid on an interim basis, and yet the school authority, as is its right, proceeds with all the appellate steps and is ultimately vindicated, again, the conclusion that the school district did nothing wrong, sort of the logic of your position is that there should be recoupment available to the school district at the end of that process to avoid the absurdity of a situation where the school district is ultimately vindicated yet they've had to pay out all this money, but courts have uniformly, uniformly rejected any attempt at recoupment. Isn't that correct? Right. I would say that that's unfortunate, and that's really a matter for Congress. You know, school districts are stuck with the law as it is. However, here, under these facts, I'm distinguishing a case where a request for interim tuition is made after an unfavorable decision on the merits, and I'm suggesting that awarding interim relief, essentially injunctive relief, for the first time, after the case has been resolved on the merits in a way favorable to the school district, that that's absurd. I believe that that would be really absurd in any case, awarding injunctive relief after the merits decision has been decided in favor of the school district who did not violate IDEA. If there are no other questions, thank you. Thank you, Your Honors. All right, we'll take the case under advisement as well argued.